IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JAMES CURTIS GWIN                                                       PLAINTIFF

v.                                   Civil No. 1:23-cv-01101-BAB

SHERIFF TOMMY STURGEON;
JAIL ADMINISTRATOR JOHNNY GUY;
and CORRECTIONAL OFFICER SHARON GWIN           DEFENDANTS

## ORDER AND MEMORANDUM OPINION

Plaintiff, James Curtis Gwin filed this action pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Currently before the Court is Defendants' Motion for Summary Judgment on the limited issue of exhaustion. (ECF No. 21). Plaintiff responded. (ECF No. 33). Defendants replied. (ECF No. 34). This matter is now ripe for consideration.[1]

### I. BACKGROUND

Plaintiff filed his original Complaint and Application to proceed *in forma pauperis* ("IFP") on November 3, 2023. (ECF Nos. 1, 2). The Court provisionally filed Plaintiff's Complaint and ordered Plaintiff to file a completed IFP Application. (ECF No. 3). Plaintiff did so on November 13, 2023, and the Court granted Plaintiff IFP status on November 14, 2023. (ECF Nos. 6-7).

At all times relevant to the claims in this matter, Plaintiff was a pretrial detainee at Ashley

---

1 On April 16, 2024, the parties consented to have the undersigned conduct all proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 26).

County Detention Center ("ACDC") in Hamburg, Arkansas. In his Complaint, Plaintiff alleges three claims against three defendants: Sheriff Tommy Sturgeon, Jail Administrator Johnny Guy, and Correctional Officer Sharon Gwin.

In Claim One, Plaintiff claims all Defendants violated his constitutional rights through the conditions of his confinement, by denying him medical care, and a "denial of accusations." (ECF No. 1, p. 4). Plaintiff's specific factual allegations read as follows:

> On August 12th 2023 I was taken by Sheriff's deputies to Ashley County Medical Center and treated for infection as a result of a fellow inmate contaminating my drinking cup with his genitals and urine. The inmate also threatened my life numerous times, and claims to have a sexual relationship with my estranged wife, and correction officer, Sharon Gwin.
>
> On the 13th, while placed in a holding cell under observation, I pleaded with Mrs.Gwin for her help, because my airways were constricted, because the medication had not taken action yet against the infection, she denied calling a medical professional and … laughed in my face as I suffered. I could hardly breathe or swallow food or water until the evening of the 14th. I mentioned the incident to administrator Guy, after being removed from an almost two week quarantine for my infection  His reply was "I'm glad you told me, but that story is false, and was not the reason for your illness." The inmate who contaminated my cup was left in the position of barrack Porter until his departure to ADC two weeks also. I filed a grievance on 9/3 which is still pending.

(ECF No. 1, pp. 4-5) (errors in original). Plaintiff also alleges official capacity claims related to his factual allegations in Claim One:

> I feel, for one, because of my relationship with officer Gwin, I should have never been incarcerated in this facility to begin with. I am being held for probation violation in Bradley County, and Sheriff Sturgeon was very adamant about bringing me here, from my understanding, for reasons known only to him…I don't personally know Sherriff Sturgeon but from this experience, he seems to be a man who acts Foolishly on impulse, and enjoys stirring up trouble. He knew through my wife and certain Family members of mine that our relationship is troubled, and that my incarceration at Ashley County Detention Center would be a problem for both parties, yet he chose to, rather was adamant to bring me here anyway.
>
> In other words, he knew Full well what he was getting into. Administrator Guy only does what he is told. However, it is my understanding that the welfare of his inmates is his priority and in that respect, I feel action should have been taken on his part. My grievance has been electronically filed for well out a month, and remains un-checked.

(ECF No. 1, p. 5) (errors in original).

The Court previously dismissed Plaintiff's Claim Two through a Screening Report and Recommendation and Order. (ECF Nos. 14, 17). Therefore, it need not be addressed on Defendants' Motion.

Finally, in Claim Three, Plaintiff claims Defendant Sturgeon violated his constitutional rights through his conditions of confinement and "tampering with medication." (ECF No. 1, p. 8). Specifically, Plaintiff alleges:

> As of Friday October 5th, my medications have been brought to me, and all other inmates as well, crushed together and put into the same package. This is very dangerous, because I take blood pressure medicine that is time released. So do others. If I understand correctly, it is against the law to tampers with meds, without a license.
>
> I have congestive heart failure, and I have noticed a hike in my blood pressure since this practice began. I also have had to request my blood pressure taken for the last week or so. A CHF patient should be checked several times daily. Please help. Ignorance is going to kill us all.

(ECF No. 1, p. 9). Plaintiff also makes an official capacity claim against Defendant Sturgeon related to the practice of ACDC in crushing detainees' medication. *Id.*

Plaintiff only seeks compensatory damages as relief in this matter. (ECF No. 1, p. 10).

In their Motion, Defendants argue Plaintiff failed to exhaust his administrative remedies under the ACDC Grievance Procedure for his Claims occurring on both August 13, 2023 and October 5, 2023. First, Defendants assert the grievance submitted by Plaintiff referring to the August 13, 2023 incident in Plaintiff's Claims One does not mention denial of medical care or "denial of accusations" as claimed in Plaintiff's Complaint. (ECF No. 21). Next, Defendants contend Plaintiff did not file any grievances regarding his claims of medication tampering on October 5, 2023. *Id.*

In his Response, Plaintiff argues he has exhausted his administrative remedies by submitting handwritten grievances on Claim One. Plaintiff argues Exhibit A2, Page 7 of 28 in Document Number 23-3 supports this contention. Plaintiff did not execute his Response under penalty of perjury or have it notarized. (ECF No. 33). However, Plaintiff also submitted an Affidavit which is sworn and notarized, and Plaintiff makes this same assertion regarding his handwritten grievances in this Affidavit. (ECF No. 27).

In their Reply, Defendants argue there is no evidence of any handwritten grievances submitted by Plaintiff. Further, Defendants argue even if Plaintiff submitted handwritten grievances addressing his Claims, this would not satisfy ACDC's Grievance Procedure which requires grievances to be submitted electronically. (ECF No. 34, p. 2).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

### III. DISCUSSION

The PLRA mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S. C. § 1997e(a) (held unconstitutional on other grounds). Exhaustion is mandatory. *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court explained that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The *Jones* Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The parties here do not dispute the ACDC has a Grievance Procedure, and Plaintiff used this procedure throughout his incarceration at the ACDC. Defendants attached the Grievance Procedure in whole to their Motion, and the Court incorporates the relevant sections herein:

> **POLICY STATEMENT:** Detainees confined to the Ashley County Detention Facility will be permitted to file grievances and will be assured of written responses from Detention Facility officials in a timely and orderly manner without fear of reprisal or prejudice.

(ECF No. 23-4, p. 1).

**SPECIFIC PROCEDURES:**

1. **Definition:** For purposes of this policy, a "grievance" will be defined as a written complaint made to the Detention Facility Administrator by a detainee concerning policy, procedure, conditions or actions by staff that may directly affect the detainee personally.

2. **Notification of Detainee Grievance System to Detainees:** A summary of the detainee grievance system will be included in the Detainee Handbook and provided to detainees at the time of their admission to the facility. Detainees who are illiterate, non-English speaking or disabled will be afforded the opportunity to listen to taped versions of the Detainee Handbook as outlined in Ashley County Detention Facility Policy 5.01, "Detainee Rules Manual."

3. **Reprisals:**

    A. Detention officers will assist and encourage detainees to resolve disputes or complaints informally prior to filing a written grievance on the matter. However, under no circumstances will a Detention officer attempt to discourage or threaten any detainee desiring to file a written grievance.

    B. Should an allegation be made by a detainee(s) or other employee(s) that an officer has threatened or has retaliated against a detainee for filing a grievance, the Detention Facility Administrator will investigate the matter and appropriate disciplinary action up to and including termination from employment could result.

4. **Grievable and Non-Grievable Items:**

    A. **Grievable Items:** Detainees may file formal grievances on the following matters:

    1.) Detention Facility policy, procedures or conditions that affect a detainee personally;

(ECF No. 23-4, p. 2).

    2.) Actions taken by staff or other detainees that have the effect of depriving the detainee of a guaranteed right, service or privilege;

    3.) Detainee personal property complaints; and,

    4.) Allegations of abuse, neglect or mistreatment by staff or other detainees.

    B.  <u>Non-Grievable Items:</u>  The following matters are considered non-grievable and will be addressed through other means:

    1.) Disciplinary actions (refer to Policy 5.10, Detainee Disciplinary Procedures);

    2.) State and Federal Court decisions;

    3.) State and Federal laws and regulations; and,

    4.) Other matters beyond the control of Detention Facility personnel.

5.  <u>Filing a Detainee Grievance:</u>

    A. The Detention Facility lieutenant or designee shall be responsible for ensuring that a sufficient number of Detainee Grievance Forms are available for distribution to detainees.

    B. Any detainee confined to the facility may request a detainee Grievance Form, from any staff member. Once a request has been made, the staff member will be responsible for providing the detainee with a form prior to leaving the facility at the end of his/her duty tour.

    C. The detainee will be responsible for completing the form and returning it to a Detention officer. For purposes of confidentiality,

(ECF No. 23-4, p. 3).

the detainee may opt to place the form in a sealed envelope addressed to the Detention Facility Administrator. Envelopes shall be provided to detainees for this purpose upon request.

D. In order for a grievance to be processed, the detainee must include the following information on the Detainee Grievance Form:

1.) Detainee Name, housing location and current date;

2.) Whether the form is being filed as a "grievance" or an "appeal";

3.) Date and time of the alleged incident or action the caused the grievance to be filed;

4.) A specific description or summary of the incident;

5.) Detention officer(s), detainee(s) or other person(s) involved in the incident; and,

6.) Signature of detainee.

E. Detention officers are responsible for accepting all completed grievance forms given to them by detainees.

F. Detention officers receiving completed Detainee Grievance Forms will ensure that they are placed in the appropriate file box marked "Detention Facility Administrator" located in the booking area prior to leaving the facility at the end of their duty tour.

6. <u>Responses to Detainee Grievances:</u>

A. All grievances will be sent to the Detention Facility Administrator.

(ECF No. 23-4, p. 4).

> B. The Detention Facility Administrator will be responsible for maintaining a log of all complaints filed. At a minimum, the log should contain the following information along with a copy of the grievance:
>
> 1.) Name of the detainee filing the grievance;
>
> 2.) Date the grievance was filed by the detainee;
>
> 3.) Date the grievance was received by the Detention Facility Administrator; and,
>
> 4.) Date the grievance was responded to.
>
> C. The Detention Facility Administrator or designee will investigate all detainee grievances and provide a <u>written response to the detainee within five (5) working days</u> of the date he/she received the complaint.
>
> D. Upon investigation of the complaint, the Detention Facility Administrator will prepare a written response to the detainee. The response will include the following information:
>
> 1.) Whether he/she agrees or disagrees with the detainee's complaint;
>
> 2.) An explanation or reason for how this conclusion was reached; and,
>
> 3.) Any action that may have been or will be taken to correct the problem or situation, if applicable.
>
> E. The Detention Facility Administrator will ensure that the written response is forwarded to the detainee within the

(ECF No. 23-4, p. 5).

> scheduled time frame, and shall record the date that the grievance was responded to and forwarded to the detainee in the log book.
>
> F. The Detention Facility Administrator will maintain a separate file for maintaining all detainee grievances. Copies of detainee grievances will not be filed in the detainee's confinement record.

(ECF No. 23-4, p. 6).[2]

As an initial matter, the Court notes the ACDC Grievance Procedure is written not to only accept handwritten grievances on paper forms, but to require them. The Procedure requires a signature on the form, and for the form to be physically submitted to an ACDC officer. Despite Defendants' arguments that electronic grievances were required by the ACDC, this Grievance Procedure has no such requirement. (ECF No. 23-4).

Furthermore, this Grievance Procedure does not contemplate electronic submissions of grievances, but based on this record, Defendants now accept electronically submitted grievances at the ACDC. Accordingly, as the parties do not dispute that Plaintiff's electronically submitted grievances satisfy the ACDC Grievance Procedure, the Court will as well.

### A. Claim One

Plaintiff's Claim One, asserted against Defendants Guy and Gwin, claims: (1) Plaintiff was denied medical care after another inmate caused Plaintiff a throat infection from placing his genitals in Plaintiff's drinking cup; and (2) challenges the conditions of Plaintiff's confinement—in segregation, under the authority of his estranged wife, and with a fellow inmate that seeks to contaminate him. (ECF No. 1, p. 4-5). Defendants do not dispute Plaintiff filed a grievance on

---

2 The ACDC grievance procedure also includes an appeal procedure, however, since appealing is not in issue here, the Court need not include that section of the Grievance Procedure.

September 3, 2023 regarding the incident with the fellow inmate which occurred on August 13, 2023. However, they argue Plaintiff failed to grieve the specific issue of denial of medical care or his claim for "denial of accusations." (ECF No. 22).

The grievance filed by Plaintiff on September 3, 2023 states:

A FELLOW INMATE WHO WAS AND STILL IS BARRACK PORTER STUCK HIS PRIVATES IN MY DRINK CUP AND SPIT IN IT RESULTING IN MAKING ME SICK AND HAVING TO VISIT THE EMERGENCY ROOM ON THE 12TH AND HAVING TO BE SEGREGATED AND TREATED FOR INFECTION. I TRIED TO REPORT THE INCIDENT NUMEROUS TIMES THROUGH THE PHONE TO NO AVAIL. REPORTED THE INCIDENT TO MRS. GWIN, WHO LAUGHED IN MY FACE, AND REPORTED TO ADMINISTRATOR GUY WHO SAID HE WAS GLAD I TOLD HIM, BUT THE INCIDENT WAS "PROBABLY JUST A BUNCH OF HEARESAY" THE PRISON RAPE HOTLINE DOES NOT WORK IN ANY OF THE BARRACKS

(ECF No. 23-3, pp. 7) (emphasis in original). Plaintiff listed the persons involved in this grievance as: JAMES GWIN JOHNNY GUY, SHARON GWIN, and CARDELL EDWARDS. *Id*.

Plaintiff clearly grieved the issue of Defendants failing to take his complaint about his fellow inmate, his segregation, and his problem with Defendant Gwin, but there is nothing in this grievance regarding a denial of medical care.[3] Plaintiff does not mention the facts, of which he complains in his Complaint—the denial of medical attention after returning from the emergency room. Accordingly, plaintiff has failed to exhaust his denial of medical care claim, but his conditions of confinement claim was exhausted by the grievance procedure and shall proceed.[4]

Plaintiff also argues he submitted two handwritten grievances on the issues in Claim One.

---

3 The Court notes Plaintiff uses the terms "denial of accusation" in his complaint, but there is no such constitutional claim. The Court does not construe this phrase to state any cognizable Section 1983 claim. The Court construes Plaintiff's Claim One to state a claim for denial of medical care and to challenge his conditions of confinement.

4 As previously noted, Defendants did not raise the issue of Plaintiff failing to appeal his grievance, and the Court shall not make arguments for the parties herein.

(ECF No. 33, p. 1). However, Plaintiff has no evidence regarding these handwritten submissions. Furthermore, Plaintiff states he is unsure if his handwritten grievances were received by the jail administrator or any other ACDC employee. *Id.* Defendant Guy stated in his Affidavit that Plaintiff did not submit any grievances regarding his Claim Three. (ECF No. 23-1, p. 2). Plaintiff has not adequately disputed Defendant Guy's Affidavit and shown any material facts in dispute regarding the exhaustion of the denial of medical care claim.

### B. Claim Three

In Claim Three, Plaintiff complains of Defendant Sturgeon ordering his medication crushed prior to administration. (ECF No. 1, p. 9). Defendants argue Plaintiff failed to file a grievance on this issue at all. There are no grievances related to Plaintiff's medication submitted through the KIOSK on the record. (ECF No. 23-3). Plaintiff does not dispute this fact. He argues he submitted handwritten grievances regarding Claim One, but not Claim Three. Accordingly, as the ACDC Grievance Procedure clearly requires Plaintiff submit a grievance to the Jail Administrator, and the record shows it is undisputed Plaintiff failed to do this regarding his medication claim, then Claim Three was not exhausted.

## IV. CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment on the limited issue of exhaustion (ECF No. 21) is hereby **GRANTED in part** and **DENIED in party**. Plaintiff's claims for denial of medical care in Claim One and all of Plaintiff's Claim Three are hereby dismissed without prejudice, and Defendant Sturgeon is dismissed from this matter. Plaintiff's Claim One for conditions of confinement against Defendant Gwin and Guy in both their official and individual capacities shall proceed.

IT IS SO ORDERED this 13th day of November 2024.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE